UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


AMERICAN ECONOMY INSURANCE
COMPANY, ET AL.                          CIVIL ACTION

VERSUS                                   NUMBER 07-748-RET-SCR

BAYOU FABRICATED PRODUCTS,
INC., ET AL.

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, September 15, 2009.

                                    STEPHEN C. RIEDLINGER
                                    UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AMERICAN ECONOMY INSURANCE
COMPANY, ET AL.                          CIVIL ACTION

VERSUS                                   NUMBER 07-748-RET-SCR

BAYOU FABRICATED PRODUCTS,
INC., ET AL.

**MAGISTRATE JUDGE'S REPORT**

Before the court is a Motion for Partial Summary Judgment on Coverage (FRCP Rule 56) filed by defendant Bayou Fabricated Products, Inc. Record document number 29. Also before the court is a Motion for Partial Summary Judgment on Coverage (FRCP Rule 56) filed by defendants Zurich American Insurance Company and Milton J. Womack, Inc. Record document number 30. The motions are opposed.[1]

Plaintiffs American Economy Insurance Company and American States Insurance Company filed this action to determine whether an insurance policy provided coverage for damages resulting from a fire that occurred at the O'Brien House on July 24, 2007. The O'Brien House is a multi-building facility which provides various services to recovering alcoholics and drug addicts. Defendants Bayou Fabricated and Womack were in the process of constructing a single room occupancy building (hereafter, the SRO building) at the

---

[1] Record document number 33. Defendants Zurich American Insurance Company and Milton J. Womack, Inc. filed a reply brief, record document number 37.

O'Brien House complex. A Bayou Fabricated employee was welding metal stairs to the SRO building when sparks from a welding torch ignited tar paper and other flammable materials on the site and caused the fire.

Plaintiffs issued an insurance policy to defendant Bayou Fabricated for commercial general liability coverage. Defendant Womack was the general contractor on the SRO building project and an additional insured under the policy. The policy was subject to a Multi-Unit and Tract Housing Residential Exclusion endorsement (hereafter, the Residential Exclusion). The Residential Exclusion provides:

> This insurance policy does not apply to:
>
> **Multi-Unit and Tract Housing**
>
> "Bodily injury," "property damage," or "personal advertising liability" arising out of any "construction operations" whether ongoing operations or operations included within the products-completed operations hazard that involve a "housing tract" or "multi-unit residential building."[2]

The Residential Exclusion defined a "multi-unit residential building" as follows:

> "Multi-unit residential building" means condominiums, townhouses, apartments, dormitories or similar structures that have more than four (4) units built or used for the purpose of residential occupancy, at the same location or complex, regardless of the number of buildings.[3]

---

[2] Record document number 29-6, Bayou Fabricated exhibit B, Multi-Unit and Tract Housing Residential Exclusion (A)(2).

[3] *Id.*, ¶ B.

2

Plaintiffs sought a declaratory judgment finding that the Residential Exclusion precluded a duty to defend and coverage under the policy for any claims arising out of the July 24 fire. Plaintiff American Economy Insurance Company has also moved for summary judgment arguing that the Residential Exclusion bars recovery in the circumstances of this case.[4] Plaintiff's motion is addressed in the magistrate judge's report filed contemporaneously with this report and recommendation.

Defendants moved for summary judgment and argued that the Residential Exclusion is not applicable because the SRO building is not a "multi-unit residential building" within the meaning of the Residential Exclusion. Defendants argued that the SRO building was a group home used for institutional, rather than residential, occupancy. In the alternative, the defendants argued that even if some portion of the SRO building was utilized as a multi-unit residential building, the SRO building was a mixed-use building which included gathering areas, cafeteria facilities, and counseling rooms. Defendants argued the Residential Exclusion was not applicable to mixed-use buildings. Defendants Zurich and Womack also argued that the policy provides coverage to Womack because the additional insured endorsement does not include a multi-unit residential exclusion.

---

[4] Record document number 31.

## **Applicable Law**

Summary judgment is only proper when the moving party, in a properly supported motion, demonstrates that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510 (1986). If the moving party carries its burden under Rule 56(c), the opposing party must direct the court's attention to specific evidence in the record which demonstrates that it can satisfy a reasonable jury that it is entitled to verdict in its favor. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. This burden is not satisfied by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). In resolving the motion the court must review all the evidence and the record taken as a whole in the light most favorable to the party opposing the motion, and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The court may not make credibility findings, weigh the evidence or resolve factual disputes. *Id.*; *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059, 112 S. Ct. 936 (1992).

The substantive law dictates which facts are material. *Littlefield v. Forney Independent School Dist.*, 268 F.3d 275, 282

(5th Cir. 2001). The parties agree that Louisiana law applies. In Louisiana, "[a]n insurance policy is a contract between the parties and should be construed according to the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007), *citing*, *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003). Interpretation of a contract requires determination of the common intent of the parties. La. Civ. Code Ann. art. 2045. "'The words of a contract must be given their generally prevailing meaning,' and '[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.'" *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.,* 565 F.3d 948, 954 (5th Cir. 2009), *citing*, La. Civ. Code Ann. arts. 2046-47. An insurance policy is construed "according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LSA-R.S. 22:881.

When the language of an insurance policy is clear, the courts do not have the authority to alter its terms under the pretext of interpretation. *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 518 (5th Cir. 2005). A contract is ambiguous if after applying the rules of contract interpretation, the contract is uncertain as to the parties' intent and susceptible to more than

5

one reasonable interpretation.  *Riverwood Intern. v. Employers Ins. of Wausau*, 420 F.3d 378, 382 (5th Cir. 2005).  If there is any ambiguity within an exclusionary provision or the policy as a whole it must be construed against the insurer and in favor of coverage. *Coleman*, 418 F.3d at 517, *citing*, *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801 (La. 2/25/04), 869 So.2d 96, 100.  At the same time, the rule of strict construction does not permit a perversion of language or the exercise of inventive powers to create ambiguity where none exists.  *Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 502 (5th Cir. 2002).

Whether contract language is clear or ambiguous is a question of law.  *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).  The insurance provider has the burden of proving that an exclusion unambiguously applies.  *Cochran*, 302 F.3d at 502.

## Analysis

In these motions the defendants argue that the Residential Exclusion does not apply.  Therefore, the defendants have the summary judgment burden to establish that the Residential Exclusion is not applicable.  Defendants initially argued that the SRO building is a group home used for institutional purposes, and thus does not trigger the exclusion.  In support of this argument, the defendants asserted that the SRO building is described as a group home in the building permit.  Defendants argued that the SRO

6

building is classified as Institutional Group I-1 under the 2006 International Building Code, which specifically includes halfway houses, group homes, and alcohol and drug treatment centers.[5]

Defendants asserted that the residents of the SRO building live in a supervised environment because they are required to have completed a six-month substance abuse recovery program, be employed and earn within the percentage of the medium income, and have no history of violence or domestic abuse.  Defendants noted that the SRO building does not permit family occupants, firearms, and alcohol.  Defendants asserted that the units are not available to the general public, and can only be occupied by persons in the continuum of care of the O'Brien House. Defendants also asserted that the building permit reflects that the zoning for the building is C2 Commercial and the SRO building is located in a heavy commercial district which is not approved for typical residential units, such as condos, apartments, and dormitories.

A review of the record in light of the applicable law shows that the defendants have not met their burden of showing that insurance coverage is not precluded by the Residential Exclusion.

---

[5] Record document number 29-9, exhibit D, International Building Code 2006, Section 308.1 states:
> Institutional Group I occupancy includes, among others, the use of a building or structure, or a portion thereof, in which people are cared for or live in a supervised environment, having physical limitations because of health or age are harbored for medical treatment or other care or treatment,...

7

Defendants' argument that the SRO building serves an institutional purpose and is therefore not "used for the purpose of residential occupancy," as contemplated by the Residential Exclusion, is unpersuasive.  The building permit's description of the SRO building as a group home does not establish its institutional purpose.[6]  The permit classifies the SRO building as R1 under the Residential Group Section of the International Building Code.[7] Although the defendants asserted that the SRO building is located in a C2 heavy commercial district, this does not demonstrate that residential buildings are prohibited in this district or that the SRO building could not have been constructed in a different district.[8]

With respect to the SRO building's classification under the International Building Code, the defendants have not shown that the residents of the SRO building live in a supervised environment. The evidence established that the SRO building residents live

---

[6] Record document number 29-5, Martin 10 (Building Permit), exhibit attached to Martin deposition.

[7] Record document number 29-9, exhibit D, International Building Code 2006, Section 310.1.

[8] Defendants cited § 8.210a C2 Heavy Commercial District and asserted that the Unified Development Code does not authorize construction of multi-unit residential type buildings such as apartments, dorms, townhouses or condos in the C2 district. However, a review of that section does not establish such a prohibition.  Record document number 29-10, exhibit E.

independently and are responsible for their own meals.[9] The rules and/or restrictions imposed upon the residents, such as those prohibiting the use of alcohol and firearms, do not indicate classification under the Institutional Group I occupancy section. Other residential facilities, such as school dormitories, often impose similar restrictions and are not available to the general public.

The cases relied on by the defendants are not controlling or persuasive in the circumstances of this case. In *Morristown Memorial v. Wolcom Mortgage & Realty Co.*,[10] the court ruled that an apartment building was not being used for residential purposes as defined under a state law Anti-Eviction Act. The apartment building was being used by a hospital to house students and residents involved in the hospital's educational and training programs. The act obligated landlords to continuously renew leases of residential premises except for good cause. The *Morristown* court held that the apartment building was not being used for residential purposes. However, its decision was largely based on the legislative purpose of the act.[11]

This case involves the interpretation of terms in an insurance

---

[9] Record document number 29-4, deposition of Katherine Martin, pp. 13, 16-17.

[10] 469 A.2d 515 (N.J.Super.A.D. Dec. 20, 1983).

[11] *Id.* at 187.

contract. The determination of whether the SRO building is being used for residential occupancy is based on the intent of the parties and the generally prevailing meaning of the terms of the policy. Because *Morristown* did not involve contractual interpretation, the case does not offer any guidance.

In *Connors v. The Zoning Hearing Board of Chippewa Township*[12] the court was required to determine for zoning purposes whether a facility housing recovering alcoholics could be classified as either (1) a building for educational use or (2) a municipal or civic building. *Connors* did not involve contractual interpretation or defining the term "residential." Thus, *Connors* is also inapplicable to this case.

Defendants' alternative argument that the Residential Exclusion does not apply to the SRO building because it is a mixed-use facility is equally unpersuasive. The exclusion and the facility at issue in *Bovis Lend Lease LMB, Inc. v. Royal Surplus Lines Ins. Co.*[13] are readily distinguishable from those involved in this case. In particular, the exclusion presented in *Bovis* specifically set forth the types of construction considered new residential property. The Residential Exclusion at issue in this case contains a catch-all term which includes buildings similar to those specifically listed.

---

[12] 491 A.2d 304 (Pa.Cmwlth. 1985).

[13] 806 N.Y.S.2d 53 (N.Y.A.D. 1 Dept. 2005).

The other case cited in support of the defendants' mixed-use argument, *Brend Contracting Corp. v. United National Insurance Co.*,[14] also offers no guidance. In *Brend*, the plaintiff sought policy coverage for damages which occurred during construction of a cooperative. The court held that because the policy's residential projects exclusion failed to specifically include cooperatives in the types of buildings that constitute residential projects, a question of fact existed as to whether the exclusion was applicable. Like *Bovis*, the *Brend* reasoning is not applicable in this case because the Residential Exclusion includes a catch-all term.

Defendants' argument that the SRO building was a mixed-use facility is not persuasive. Although the defendants claimed that the SRO building contained group counseling areas and a cafeteria facility, the evidence shows that the SRO building only contains rooms and common areas intended for daily residential living.[15]

With respect to the "additional insured" argument asserted by defendants Zurich and Womack, the policy specifically states that the insurance provided will not exceed the coverage and/or limits of the policy.[16] Thus, the Residential Exclusion applies to their

---

[14] 2006 WL 2851621 (N.Y.Sup. June 23, 2006).

[15] Record document number 29-4, deposition of Katherine Martin, pp. 12-13. Meetings which do occur are in the dining room area.

[16] Record document number 29-6, exhibit B, Louisiana
(continued...)

11

coverage.

Because the defendants have failed to establish that the Residential Exclusion does not apply to their claims under the policy, they are not entitled to summary judgment in their favor.

### Recommendation

It is the recommendation of the magistrate judge that the Motion for Partial Summary Judgment on Coverage (FRCP Rule 56) filed by defendant Bayou Fabricated Products, Inc., and the Motion for Partial Summary Judgment on Coverage (FRCP Rule 56) filed by defendants Zurich American Insurance Company and Milton J. Womack, Inc., be denied.

Baton Rouge, Louisiana, September 15, 2009.

*Stephen C. Riedlinger*
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

---

[16](...continued)
Contractors Liability Plus Endorsement, Additional Insured - By Written Contract, Agreement or Permit or Schedule, Section II(5)(h).